ALIDA ZILKA, as Administratrix of the Estate of ALMA D'AMBROSI, Deceased, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 44356.)

Court of Claims, February 1, 1967.

*Robert P. Best* and *Floyd J. Reinhart* for claimant. *Louis J. Lefkowitz, Attorney-General* (*Walter M. Stroup* of counsel), for defendant.

JOHN P. GUALTIERI, J. Claimant's intestate died on July 14, 1964, of self-administered rat poison while a patient in a State institution and her administratrix brings this action for damages predicated upon the State's alleged negligent supervision.

Claimant's intestate, a young lady 27 years of age became a patient at Utica State Hospital, an institution for the mentally ill, by an order of the Fulton County Judge, dated October 5, 1955. She was placed on convalescent care status in the custody of her sister on March 28, 1956. Thereafter and until March 28, 1957 she was visited regularly by the social service staff of the hospital on which date she was discharged as '' much improved ''.

For the next five years she appears to have lived a fairly normal life and was sufficiently recovered to be able to work and earn a livelihood for herself and her family.

On December 20, 1962, she was re-admitted to Utica State Hospital by an order of the Albany County Judge. She made

sufficient progress so that she was again released under convalescent care status on May 12, 1963. She returned to the hospital on November 22, 1963.

At various times from her first admission in 1955 she had shown suicidal tendencies and on two or three occasions did attempt to take her own life.

On May 10, 1964, she was progressing sufficiently well so that she was allowed to go to the home of her sister for a week. On the day that she was to return, namely May 17, the sister telephoned the hospital and said that the deceased had run away because she did not want to return to the hospital. However, a half hour later she returned home voluntarily and at 2:00 o'clock that afternoon the sister brought her to the hospital. She was placed in Ward 24, a maximum security ward and remained there until June 24 when she was transferred to Ward 29, an area in which patients are given more freedom and are allowed the privileges of the hospital grounds.

On July 14, 1964, she walked off the hospital grounds to a nearby drugstore and purchased the rat poison which she consumed during the day and died in the institution's hospital that evening.

The hospital record shows no medical determination that this patient was ready for the relaxed supervision which Ward 29 permitted and it is strongly urged on behalf of the claimant that such transfer was improvident and that for that reason the State must respond in damages.

It must be borne in mind, however, that her confinement in Ward 24 when she returned to the hospital on May 17 was not due to any suicidal tendencies, because none were indicated. Her last abnormal act before she returned to the hospital on May 17 was her attempt to escape. There is no evidence of any suicidal tendencies on this patient's part from the time she was allowed to go home on May 10, 1964 until the date of her death almost two months later.

Furthermore, there is ample evidence that while she was given the freedom enjoyed by patients in Ward 29 from June 24 to the date of her death she indicated no inclination to do herself any physical injury. On the contrary, staff attendant Edith Kosuda, said that she had observed her frequently since coming to Ward 29 and noted nothing unusual about her behavior and she gave no indication of reverting to her suicidal instincts. She saw the deceased on the morning of July 14, the date of her death, mingling with other patients and in fact was about to go to a bingo game with them.

Miss Joyce Jewel, a Nurse Supervisor, said that she observed the deceased from time to time in Ward 29 and at no time observed any abnormal conduct or any evidence of suicidal intent.

Deceased's own sister and daughter visited her on July 8, six days before her death and they observed nothing unusual about her conduct. Had she shown or indicated any suicidal ideas they most certainly would have called this to the attention of the hospital authorities. On that occasion she was on the lawn mingling with the other patients and apparently free from any suicidal symptoms.

Thus, we have again presented the question of the duty of the State and the proper functioning of our mental hospitals. The modern concept is to encourage and extend the open door policy, a program which gives a patient who responds to treatment more and more freedom in an endeavor to ultimately restore her to her community and to normal living.

This policy often carries with it the calculated risk that occasionally a patient will effectively take his or her life. As tragic as self-destruction is, hospital authorities must not be discouraged from reasonably trying to bring about an ultimate recovery.

At any time during the nine-year period that she was in and out of the hospital there was always present the opportunity for this unfortunate person to have gone into a drugstore to purchase poison with which to destroy herself or to take her life by any other means. The fact that she did so while in the custody of the State Hospital is as we say again one of those risks which society must be willing to accept if we are to hold out any hope for the mentally ill.

We think this case is distinguishable from *Herold* v. *State of New York* (15 A D 2d 835) where the court held the State liable because there was no record of any medical determination that the patient was fit for the more unrestricted freedom than she had in the security ward.

Here we feel that that determination was made when she was allowed to go home for a week on May 10 and except for her desire to avoid a return to the hospital by attempting to escape there is no evidence of any suicidal inclinations whatsoever from that time in May up to the day she took poison and died on July 14.

The light of hope must not be extinguished in these cases, not until there is no longer any hope; and who is to tell when there is an end of hope in this vast, yet uncharted field of mental illness. This patient several times was successfully returned

to her family. The further attempt at her rehabilitation by giving her freedom of the hospital grounds from June 24 until the date of her death was reasonably justified and the State should not be held liable for trying.

The claim is. hereby dismissed and judgment directed accordingly.